We dismiss the appeal as moot because our consideration of the merits is barred by 11 U.S.C. § 364(e).

Gerry **FLEISHER, Plaintiff-Appellant and Cross-Appellee,**

v.

**CITY OF SIGNAL HILL, Michael Mc-Crary, and Richard Diaz, Defendants-Appellees and Cross-Appellants.**

Nos. 86–6191, 86–6193.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 7, 1987.

Decided Oct. 14, 1987.

Stephen Yagman, Los Angeles, Cal., for plaintiff-appellant and cross-appellee.

Clinnin, Siracuse & Belcher, Los Angeles, Horvitz, Levy & Amerian, Barry R. Levy, David M. Axelrad (argued), Grant Marylander, Encino, Cal., for defendants-appellees and cross-appellants.

Before PREGERSON, NELSON and WIGGINS, Circuit Judges.

PREGERSON, Circuit Judge:

## BACKGROUND

In March 1980, Gerry Fleisher became an Explorer Scout with the Police Department ("the Department") of the City of Signal Hill ("the City"). The Explorer program, sponsored by the Boy Scouts of America, is designed to prepare youngsters for careers in law enforcement. Signal Hill Explorers normally do sixteen hours of volunteer work for the Department per week.

While Fleisher was an Explorer, he met Margaret Main, a fifteen-year-old girl who was also an Explorer. Subsequently, Fleisher attained the rank of lieutenant, making him the leader of the Explorer group. At about the time of Fleisher's promotion to lieutenant, he and Main began to socialize, forming a relationship that Fleisher calls a boyfriend/girlfriend relationship and that Main calls a "special friendship." Main and Fleisher agree that in July 1980,

when Fleisher was nineteen and Main was fifteen, they had sexual intercourse twice. According to Main, they also had sexual intercourse once in 1982. Fleisher denies that a third encounter occurred.

In late July 1980, Fleisher was hired as a temporary police cadet, a paid position with the Department. He held this position for one month. Thereafter he served the Department in various paid non-police officer capacities. Then, in August 1982, Fleisher applied for a probationary police officer position with the City. Officer Larry Morris interviewed Fleisher for the position. Morris asked Fleisher whether he had ever had sexual relations with a minor. Fleisher responded that he had had sex with his girlfriend. Morris submitted a report on the interview to Department Chief Michael McCrary, but the report contained no information about Fleisher's sexual history.

Fleisher was hired as a probationary police officer for an eighteen-month trial period beginning in February 1983. The purpose of the probationary period is to allow the Department time to evaluate officer candidates to ensure that they have the makings of effective police officers. During the five months in which he served in this probationary status, Fleisher received three reprimands based on his failure to perform his duties properly.[1]

On June 9, 1983, Main filed a forcible rape charge against an officer in the Department. During investigation of the charge, the investigating officer, Lieutenant Richard Diaz, asked Main whether she had had sexual relations with any other officers. She responded that she had had relations with three other officers, one of whom was Fleisher.[2]

Chief McCrary asked Lieutenant Diaz to investigate Fleisher's sexual conduct with Main. After a three-week investigation, Diaz submitted an investigation report to Chief McCrary. Chief McCrary terminated Fleisher's employment in July 1983, stating that Fleisher had failed to complete probation satisfactorily. The Chief testified that his reasons for terminating Fleisher were Fleisher's three reprimands for misconduct during probation and Fleisher's sexual conduct with Main.

Fleisher brought this action for damages under 42 U.S.C. § 1983 against the City and against Chief McCrary and Lieutenant Diaz. His first amended complaint stated four claims: (1) that defendants had violated his freedom of association; (2) that defendants had violated his right of privacy; (3) that, by failing to afford him a pre- or post-termination hearing, defendants had denied him due process in violation of the fourteenth amendment; and (4) that defendants' failure to afford him a hearing violated his rights under California law.

The district court dismissed the California statutory claim without prejudice after the court received the parties' written arguments on the doctrine of pendent jurisdiction. The district court then granted summary judgment in favor of defendants on Fleisher's procedural due process claim.

The remaining claims, based on Fleisher's freedom of association and right of privacy, were tried before a jury. The jury returned a verdict for Fleisher in the amount of $175,000.00. The district court awarded Fleisher attorney's fees in the amount of $65,537.50.

Fleisher appeals from the district court's grant of summary judgment on the due process claim, from the court's refusal to give a punitive damages instruction, and from the attorney's fees award, which he contends is inadequate. The City cross-appeals, contending that the right of privacy and freedom of association are, as a matter

---

1. The first reprimand occurred after Fleisher accidentally caused his weapon to discharge in the hallway of the police station. The second occurred after Fleisher failed to notify a police dispatcher of his decision to respond to a traffic incident with red lights and siren. The third occurred after an incident at Fleisher's residence in which Fleisher fired shots into a ve-

hicle driven by someone Fleisher suspected of attempted auto theft.

2. The officer implicated in the forcible rape charge and the other two officers with whom Main had allegedly had sexual relations were all terminated. One of the three officers was reinstated following an appeal to the Civil Service Commission.

of law, unavailable to Fleisher. The City also contends that the district court improperly instructed the jury on qualified immunity, on the fourteenth amendment, and on imputed knowledge. Finally, the City contends that there was no support in the record for the jury's award of emotional distress damages to Fleisher.

We affirm the district court's ruling on the due process claim. We vacate the jury verdict in favor of Fleisher on the right of privacy and freedom of association claims because we hold, as a matter of law, that Fleisher's sexual misconduct is not entitled to constitutional protection. Because Fleisher is no longer the prevailing party, we also vacate the award of attorney's fees. Because the net effect of this opinion is to deny Fleisher any recovery, discussion of punitive damages, qualified immunity, the fourteenth amendment jury instruction, and imputed knowledge would be superfluous, and we see no need to address the parties' contentions concerning those issues.

## DISCUSSION

### I. Appellant Fleisher's Contentions

#### A. Procedural Due Process

The district court granted summary judgment in favor of defendants on the due process claim.[3] This court reviews grants of summary judgment de novo. *Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir. 1986) (citing *Lojek v. Thomas*, 716 F.2d 675, 677 (9th Cir.1983)).

The fourteenth amendment's guarantee of procedural due process applies when a constitutionally protected property or liberty interest is implicated. *Board of Regents v. Roth*, 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972).

#### 1. Property Interest

■ A property interest arises "only when there is a legitimate claim of entitle-

ment, rather than an abstract need or desire for the particular benefit." *Vanelli v. Reynolds School Dist. No. 7*, 667 F.2d 773, 777 (9th Cir.1982) (citing *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709). Thus, the critical question here is whether Fleisher was entitled by law to a pre- or post-termination hearing.

The district court, in its order granting summary judgment for defendants on this issue, cites Rule 2.80.190 of the City Personnel Rules and Regulations, which "provides that a probationary employee may be rejected at any time without right of appeal or hearing." However, Fleisher argues that notwithstanding this provision, the California Government Code guarantees him a hearing.

Fleisher is incorrect. Cal.Gov't Code § 3301 (West 1980) states that the rights and protections of peace officers are a matter of statewide concern. Section 3309.5(a) provides that it shall be unlawful to deny public officers the rights and protections guaranteed them by "this chapter." Section 3304(b) provides that "[n]o punitive action, nor denial of promotion on grounds other than merit, shall be undertaken by any public agency without providing the public safety officer with an opportunity for administrative appeal." It is unclear from the language of these sections whether they apply to probationary employees like Fleisher. California courts have, however, determined the circumstances under which a probationary police officer is entitled to a hearing. The California Court of Appeal, in *Lubey v. City & County of San Francisco*, 98 Cal.App.3d 340, 159 Cal. Rptr. 440 (1979), stated: "It is settled law that a probationary (or non-tenured) civil service employee, at least ordinarily, may be dismissed without a hearing or judicially cognizable good cause." *Id.* at 345, 159 Cal.Rptr. at 443. In *Swift v. County of Placer*, 153 Cal.App.3d 209, 200 Cal.Rptr.

---

3. Fleisher's brief states that the district court "dismissed" the due process claims. However, the record indicates that the district court dismissed only the state law claim. This dismissal was proper pursuant to the court's discretion to assume or refuse jurisdiction over pendent state claims. *See Dezell v. Day Island Yacht Club*, 796 F.2d 324, 328 (9th Cir.1986). The court disposed of the constitutional due process claim by granting partial summary judgment for defendants.

181 (1984), the court suggested that the California Government Code sections discussed above, which guarantee a hearing in some cases, do not affect the general rule described in *Lubey* unless a *charge of misconduct* was made against the probationary employee, thus amounting to a "punitive action" under Government Code Section 3303. *Id.* at 215–16, 159 Cal.Rptr. at 185–86. The *Swift* court stated that "[b]are rejection during an initial hiring probation is not 'punitive action' which triggers the 'administrative appeal' right provided by section 3304, subdivision (b)." *Id.* at 216, 159 Cal.Rptr. at 185.

Under this standard, California law does not provide Fleisher with a right to a hearing. Fleisher was denied a permanent position because he failed to complete his probation satisfactorily. His termination constituted a "bare rejection." The Department made no charge of misconduct. To the extent that the Department's internal decision was based on Fleisher's sexual misconduct, the decision derived directly from his admitted sexual relations with Main rather than from some unsupported charge the proof of which would require a hearing. Thus, Fleisher has established no property interest entitling him to a due process hearing.

### 2. Liberty Interest

■ Fleisher contends that the besmirchment of his good name in connection with his termination deprived him of a liberty interest. Under the fourteenth amendment, a person's liberty interest is implicated by a termination of employment "only when the state makes a 'charge against him that might seriously damage his standing and associations in his community.'" *Stretten v. Wadsworth Veterans Hosp.,* 537 F.2d 361, 365 (9th Cir.1976) (quoting *Roth,* 408 U.S. at 573, 92 S.Ct. at 2707). The Supreme Court has stated that a hearing for a nontenured employee based on stigmatization is required "[o]nly if the employer creates and disseminates a false and

defamatory impression about the employee in connection with his termination." *Codd v. Velger,* 429 U.S. 624, 628, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977) (per curiam).

In this case, the record indicates that the Department disseminated no false and defamatory charges or information about Fleisher when it terminated him. His dismissal was based only on his failure satisfactorily to complete probation. Therefore, Fleisher's liberty interest was not implicated. Because neither a property nor a liberty interest was implicated when the Department dismissed Fleisher for unsatisfactory performance, we affirm the district court's grant of summary judgment in favor of defendants on the due process claim.

### II. Cross-appellant City of Signal Hill's Contentions

#### A. Illegal Conduct as Bar

■ The City contends as a threshold matter that because Fleisher's admitted sexual activity constituted the crime of statutory rape,[4] he is thereby barred from maintaining an action under 42 U.S.C. § 1983 for deprivation of his constitutional rights. In support of this contention, the City cites *The "Florida",* 101 U.S. (11 Otto) 37, 43, 25 L.Ed. 898 (1879), in which the Supreme Court stated that "[n]o court will lend its aid to a party who founds his claim for redress upon an illegal act." In *The "Florida",* the captain of an American ship sank a Brazilian ship and then brought an action in which he claimed the Brazilian ship as a prize of war. The Supreme Court refused to provide relief on the ground that the American captain had engaged in illegal conduct in sinking the Brazilian ship.

The rule of *The "Florida"* does not apply here. Fleisher's claims for relief are not founded on illegal acts; he does not seek to benefit because of his own misconduct. He merely asserts that he should not have been investigated or terminated from employment because of that misconduct. The

---

4. Cal.Penal Code § 261.5 (West Supp.1987), California's statutory rape law, states that "[u]nlawful sexual intercourse is an act of sexual intercourse accomplished with a female not the wife of the perpetrator, where the female is under the age of 18 years." When Fleisher had sexual relations with Main, he was nineteen and she was fifteen.

City's contention, if accepted, would require us to arrive at the anomalous holding that a person who engages in criminal conduct is thereby stripped of all constitutional protection. The cases abound with examples of courts' according constitutional protection to those who have engaged in criminal conduct. Therefore, we decline to hold that Fleisher's misconduct bars him from asserting his constitutional claims.

### B. Right of Privacy and Freedom of Association

The City contends that the jury verdict for Fleisher was improper because, as a matter of law, Fleisher's sexual conduct with Main is not protected by the constitutional right of privacy and freedom of association. We review this question of law de novo. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

The focus of our analysis is on whether privacy and associational rights obtain in the circumstances presented in the instant case. Fleisher has based his section 1983 claim on two constitutional rights of limited scope, *see* Karst, *The Freedom of Intimate Association*, 89 Yale L.J. 624, 625 (1980), and we conclude that the district court's determination that those rights extend to Fleisher's conduct is unwarranted, particularly in light of case law that issued after the district judge rejected the City's motions for summary judgment and directed verdict.

Chief McCrary terminated Fleisher in compliance with Rule 162 of the Signal Hill Police Department Rules and Regulations, which provides that

[a]ny employee is subject to discipline, dismissal, demotion or suspension by the Chief of Police for committing any of the following offenses: a. The commission of a felony or misdemeanor ... e. Conduct unbecoming an officer which might be detrimental to the service.... 1. Immorality....

Fleisher's sexual conduct arguably violates this regulation in three respects. First, Fleisher admitted to having committed acts that amounted to statutory rape, a crime under California law. Cal.Penal Code §§ 261.5, 264 (West Supp.1987). Second, Fleisher's having had sexual intercourse with a minor who was a member of the Explorer Post is arguably conduct that might indicate that his ability to serve as an effective police officer is impaired. Third, Fleisher's conduct arguably violates Rule 162's prohibition against immorality.

The issue before us is whether this regulation as applied to Fleisher violated his constitutional right of privacy and freedom of association.

The district court in its rulings and jury instructions and both parties in their briefs treat the right of privacy and freedom of association together without distinguishing between them. For the sake of clarity, it is important to define the individual ramifications of and the relationship between the two rights.

### 1. Origins of the Right of Privacy and Freedom of Association

In *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), the Supreme Court held that it was unconstitutional for the state of Alabama to force the NAACP to produce records indicating the names of its members. The Court reasoned that compelled disclosure of members' names would restrict the members' right to associate freely and thus to engage in the expressive activities protected by the first amendment. *Id.* at 462–63, 78 S.Ct. at 1171–72. The Court noted that because of "the vital relationship between freedom to associate and privacy in one's associations," *id.* at 462, 78 S.Ct. at 1172, the members were entitled to opt for anonymity.

Expanding on the discussion in *NAACP v. Alabama*, the Court in *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), explained that "the First Amendment has a penumbra where privacy is protected from governmental intrusion." *Id.* at 483, 85 S.Ct. at 1681. The Court added that other "specific guarantees in the Bill of Rights have penumbras, formed by emanations from those guaran-

tees that help give them life and substance." *Id.* at 484, 85 S.Ct. at 1681. Stating that the first, third, fourth, fifth, and ninth amendments have emanations that constitute "zones of privacy," *id.*, the Court held that a Connecticut statute forbidding the use of contraceptives impermissibly invaded this protected zone. *Id.* at 485–86, 85 S.Ct. at 1682.

### 2. The Right of Privacy

█ The right of privacy discussed in *Griswold* is one aspect of the liberty interest created by the fourteenth amendment's due process clause. *Carey v. Population Servs. Int'l*, 431 U.S. 678, 684–85, 97 S.Ct. 2010, 2015–16, 52 L.Ed.2d 675 (1977) (citing *Roe v. Wade*, 410 U.S. 113, 152, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973)).[5] The Supreme Court has not defined the outer limits of the right of privacy, but has extended the right to cases involving personal decisions about marriage, procreation, contraception, family relationships, child rearing and education, and abortion. *See Carey*, 431 U.S. at 684–85, 97 S.Ct. at 2015–16. In many of these cases, the Court has reasoned that the right of privacy obtained because the state law at issue threatened the sanctity of marriage or of the family. *See, e.g., Griswold*, 381 U.S. at 485–86, 85 S.Ct. at 1682; *see also Fugate v. Phoenix Civil Serv. Bd.*, 791 F.2d 736, 739–40 (9th Cir.1986). In a smaller group of cases, the Court has extended the right of privacy to certain matters implicating individual autonomy, whether or not the individual in question was married. *See, e.g., Eisenstadt v. Baird*, 405 U.S. 438, 453, 92 S.Ct. 1029, 1038, 31 L.Ed.2d 349 (1972); *see also Fugate*, 791 F.2d at 739. Thus far, the Supreme Court has only extended the right of privacy to unmarried individuals in cases involving contraception and abortion. *Fugate*, 791 F.2d at 740. In addition, the Court has expressly stated that the right of

privacy does not protect all private sexual conduct. The Court stated in *Bowers v. Hardwick*, —— U.S. ——, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986), that

> any claim that [the Court's prior privacy cases] ... stand for the proposition that any kind of private sexual conduct between consenting adults is constitutionally insulated from state proscription is unsupportable. Indeed, the Court's opinion in *Carey* twice asserted that the privacy right, which the *Griswold* line of cases found to be one of the protections provided by the Due Process Clause, did not reach so far.

*Id.* 106 S.Ct. at 2844 (citing *Carey*, 431 U.S. at 688 n. 5, 694 n. 17, 97 S.Ct. at 2018 n. 5, 2021 n. 17).

In *Bowers*, the Supreme Court held that a Georgia sodomy statute did not violate the right of privacy of homosexuals. While *Bowers* indicates that the right of privacy does not protect all kinds of sexual conduct, the Court's earlier cases also make clear that the sexual conduct of unmarried persons is protected by the right of privacy in some contexts.

Because Fleisher was not married to Main when they engaged in sexual intercourse, none of the cases grounded in the sanctity of marriage applies to this case. We must determine whether the principle of individual autonomy alone justifies conferring right of privacy protection on Fleisher's conduct with Main.

Two Ninth Circuit cases have considered the constitutionality of police departments' employment decisions based on the sexual conduct of unmarried persons. In *Thorne v. City of El Segundo*, 726 F.2d 459, 471 (9th Cir.1983), *cert. denied*, 469 U.S. 979, 105 S.Ct. 380, 83 L.Ed.2d 315 (1984), plaintiff served as a clerk in the El Segundo police department. When she applied to become a police officer with the depart-

---

5. This generalized liberty interest includes two aspects. "One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." *Whalen v. Roe*, 429 U.S. 589, 599–600, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977) (footnotes omitted). Fleisher argues that both types of privacy interests are

implicated here. He argues that the investigation into his sexual conduct with Main violated his interest in "avoiding disclosure of personal matters." He also contends that by terminating him because of his sexual relations with Main, the City deprived him of his independence in "making certain kinds of important decisions."

ment, she was subjected to a polygraph interview and was questioned extensively about her sexual history. When the polygraph interviewer learned that she had been pregnant and had suffered a miscarriage, he asked who the father was. Thorne told him that the father was a married officer in the department with whom she had had an affair that had since ended. Ultimately, Thorne was refused the position, in part because of her relationship with the married officer.

We held that the inquiry into Thorne's sexual history and the refusal to hire her based on her sexual conduct violated her right of privacy and freedom of association. We stated:

> In the absence of any showing that private, off-duty, personal activities of the type protected by the constitutional guarantees of privacy and free association have an impact upon an applicant's on-the-job performance, and of specific policies with narrow implementing regulations, we hold that reliance on these private non-job-related considerations by the state in rejecting an applicant for employment violates the applicant's protected constitutional interests and cannot be upheld under any level of scrutiny.

*Thorne*, 726 F.2d at 471.

In the second case, *Fugate v. Phoenix Civil Serv. Bd.*, 791 F.2d 736, 741 (9th Cir.1986), we attempted to define the general contours of the right of privacy in sexual conduct recognized in *Thorne*.[6] In *Fugate*, two vice officers of the Phoenix Police Department were revealed to have had sexual relationships with prostitutes. These relationships were carried on openly and publicly and while the officers were on duty. One of the prostitutes was a paid police informant. Numerous prostitutes and members of the police force were aware of the relationships. When their superiors learned of this conduct, both officers were terminated pursuant to a depart-

mental regulation prohibiting " 'conduct unbecoming an officer and contrary to the general order of the police department.' " *Fugate*, 791 F.2d at 742.

We held that the right of privacy as described in *Thorne* did not protect the officers' activity, stating:

> Fugate and Barnhart ... ask us to find that *Thorne's* protection of the right of privacy extends to sexual behavior that is not purely private, that compromises a police officer's performance, and that threatens to undermine a police department's internal morale and community reputation. We find that *Thorne's* protection does not extend that far.

*Id.*

Under the line of Supreme Court cases beginning with *Griswold* and extending to *Bowers* and under our decisions in *Thorne* and *Fugate*, we hold that the Department did not violate Fleisher's right of privacy by terminating him because of his admitted misconduct. This conduct was illegal, inappropriate in an individual who aspired to become an officer on the Department's police force, and detrimental to the Department as a whole.

The illegality of Fleisher's behavior creates a substantial barrier to his successfully asserting a privacy claim. Fleisher has not challenged the constitutionality of California's statutory rape law or of the Department's regulations, and yet he would have us hold that acts amounting to statutory rape are protected by the right of privacy. Were we to accept his argument, we would in effect be holding that the City is unable to consider as a basis for terminating an employee the employee's admission of having committed criminal sexual misconduct.

Fleisher's sexual misconduct, like that of the officers in *Fugate*, compromised his performance as an aspiring police officer. Although Fleisher committed the conduct

---

**6.** When the district court in the instant case issued its summary judgment order, when the court instructed the jury, and when the jury delivered its verdict, the court did not have the benefit of the *Fugate* decision. The summary judgment order was issued on October 9, 1985.

The jury was instructed on May 22, 1986. The jury rendered its verdict on May 22, 1986. *Fugate* was decided on June 10, 1986. The district court also did not have the benefit of *Bowers*, which was decided on June 30, 1986.

while still an Explorer, the conduct nevertheless has some bearing on his foreseeable conduct as a police officer. It is understandable that the Department would be concerned that individuals hired to be guardians of the law should themselves have a history of compliance with the law.

Like the officers' conduct in *Fugate*, Fleisher's conduct threatened to undermine the Department's community reputation and internal morale. Fleisher, a leader of the Department Explorer Post, committed statutory rape with a girl who was a member of the Post. The Department has a manifest interest in ensuring that minor girls who join the Explorer program do not become the victims of statutory rape as a result of their participation in the program. If behavior like Fleisher's became commonplace in the Post, the Explorer program would be the object of community disrepute. Similarly, if it became known that the Department was willing to hire as permanent officers individuals who had admitted to acts amounting to statutory rape with female Explorers, the entire Department's reputation could suffer. Finally, if other members of the Department learned that the Department would hire admitted violators of the law as permanent officers, Department morale would suffer as well.

Unlike the conduct engaged in by the plaintiff in *Thorne*, Fleisher's conduct was clearly listed in the Department regulations as grounds for termination. While arguably vague in some respects,[7] Department Rule 162 clearly puts employees and candidates for employment on notice that illegal or immoral conduct will put their employment in jeopardy. The presence of this regulation limits the Department's ability to apply arbitrary standards in its employment decisions.

In sum, we are unable to find that the right of privacy extends to sexual conduct that is concededly illegal, that implicates a police officer candidate's ability to perform effectively as an officer, and that adversely affects a police department's morale and community reputation.

Now that we have established that the right of privacy does not protect Fleisher's conduct, it remains for us to consider whether Department Rule 162 has a rational basis. *See Fugate*, 791 F.2d at 741. In *Fugate*, we held that the Phoenix regulation at issue was presumptively valid because it "is based on the City's method of organizing its police force." *Id.* We conclude that Rule 162, which is quite similar to the Phoenix rule prohibiting conduct unbecoming to officers or contrary to department order, is part of the Department's method of organization. The Signal Hill regulation appears to be designed to protect the reputation of the Department and to ensure discipline and high morale among members of the Department. Thus, Rule 162 is presumptively valid.

Fleisher therefore bears the burden of showing "that there is no rational connection between the regulation in question and the promotion of safety of persons and property." *Id.* at 742 (citing *Kelley v. Johnson*, 425 U.S. 238, 248, 96 S.Ct. 1440, 1446, 47 L.Ed.2d 708 (1976)). We hold that Fleisher has not carried his burden. Regulation 162, which prohibits illegal and immoral conduct and conduct that would otherwise impair an officer's effectiveness, certainly bears a rational relationship to the achievement of the goals of safety of persons and property.

### 3. The Freedom of Association

The freedom of association substantially overlaps with the right of privacy. *See Griswold*, 381 U.S. at 483–84, 85 S.Ct. at 1681; *NAACP v. Alabama*, 357 U.S. at 462, 78 S.Ct. at 1171. As described by Supreme Court precedent, the freedom of association takes two forms. *Roberts v. United States Jaycees*, 468 U.S. 609, 617, 104 S.Ct. 3244, 3249, 82 L.Ed.2d 462 (1984). In *Roberts*, Justice Brennan's majority opinion described the two forms as follows:

---

7. Like the plaintiff in *Fugate*, Fleisher has not challenged the applicable regulation on vagueness grounds. Thus, we need not reach the vagueness issue. *See Fugate*, 791 F.2d at 742 n. 7.

In one line of decisions, the Court has concluded that choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme. In this respect, freedom of association receives protection as a fundamental element of personal liberty. In another set of decisions, the Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion. The Constitution guarantees freedom of association of this kind as an indispensable means of preserving other individual liberties.

*Roberts*, 468 U.S. at 617–18, 104 S.Ct. at 3249.

The first of these two manifestations of the freedom of association, the "freedom of intimate association," *see Roberts*, 468 U.S. at 618, 104 S.Ct. at 3249, extends to various aspects of individual liberty guaranteed by the Bill of Rights. This branch of the freedom of association affords "the formation and preservation of certain kinds of highly personal relationships a substantial measure of sanctuary from unjustified interference by the State." *Id.* at 618, 104 S.Ct. at 3249. As applied thus far in Supreme Court case law, the freedom of intimate association is coextensive with the right of privacy; both the freedom of intimate association and the right of privacy describe that body of rights that protect intimate human relationships from unwarranted intrusion or interference by the state. *See* Linder, *Freedom of Association After Roberts v. United States Jaycees*, 82 Mich.L.Rev. 1878, 1884–85 & n. 38

(1985); *see generally* Karst, *The Freedom of Intimate Association*, 89 Yale L.J. 624 (1980).[8]

Because the right of privacy and the freedom of intimate association have the same scope, our analysis of the freedom of association in this case is the same as our analysis of the right of privacy. Because Fleisher's sexual conduct with Main was illegal, compromised Fleisher's performance as an aspiring officer, and threatened the Department's community reputation and internal morale, we decline to hold that the freedom of intimate association protects Fleisher's illegal sexual conduct with Main.

The second manifestation of the freedom of association, "the right to associate for expressive purposes," *see Roberts*, 468 U.S. at 623, 104 S.Ct. at 3252, allows individuals to "associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Id.* at 622, 104 S.Ct. at 3252. From all indications, Main and Fleisher did not associate with a view toward any of these goals. Therefore, we hold that Fleisher's sexual conduct, which constituted statutory rape, does not receive protection from the freedom of expressive association.[9]

Because we hold as a matter of law that Fleisher's right of privacy and freedom of association were not violated by his termination, we must vacate the jury verdict in favor of Fleisher on those issues.

## CONCLUSION

We affirm the district court's grant of summary judgment for defendants on the due process claim. We vacate the jury verdict in favor of Fleisher on the right of privacy and freedom of association, vacate

**8.** In many of the cases cited in *Roberts'* discussion of intimate association, the Court casts its reasoning solely in terms of the right of privacy, *see, e.g., Carey v. Population Serv. Int'l,* 431 U.S. at 684–86, 97 S.Ct. at 2015–16, *cited in Roberts,* 468 U.S. at 619, 104 S.Ct. at 3250, or treats the right of privacy and the freedom of association as a single concept, *see Griswold,* 381 U.S. at 483, 85 S.Ct. at 1681, *cited in Roberts,* 468 U.S. at 622, 104 S.Ct. at 3252.

**9.** The record makes clear that Chief McCrary terminated Fleisher partly because of the nature of his sexual conduct and partly because of the identity of Fleisher's sexual partner. Even assuming that Fleisher was terminated solely because his sexual partner was another Explorer, the termination does not violate the freedom of expressive association because no activity that was arguably expressive was involved.

the award of attorney's fees, and remand for further proceedings consistent with this opinion. Each side shall bear its own costs.