Kim REUTER, Plaintiff,

v.

Bob SKIPPER, Defendant.

Civ. No. 92–1622–RE.

United States District Court,
D. Oregon.

Aug. 24, 1993.

ty. She was placed on paid administrative leave in October 1992 due to her personal association with a man who once had been confined in a correctional facility (an "ex-felon"). On December 17, 1992, she was informed by Major Slyter of the Multnomah County Sheriff's Office, that he would recommend her termination from County employment because of her association with the ex-felon. Plaintiff filed this lawsuit seeking a preliminary injunction to prohibit the county from firing her. She also sought a temporary restraining order (TRO) to prevent her firing at Christmas.

On November 24, 1992, this court granted plaintiff's motion for a TRO, restraining defendant, the Multnomah County Sheriff, from discharging plaintiff. Defendant stipulated to expansion of the TRO beyond ten days until the preliminary injunction hearing. Defendant then filed a Motion to Dissolve the TRO on January 11, 1993. This motion was subsumed in the motion for preliminary injunction.

### FACTUAL BACKGROUND

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 seeking declarations that (1) her association with the ex-felon is protected by the first amendment of the United States Constitution; and (2) that defendant's work rules are constitutionally overbroad. Plaintiff also seeks compensatory damages pursuant to 42 U.S.C. § 1983.

The Sheriff's Office has work rules covering its employees. Those rules were recently amended on November 20, 1992. The amended work rules provide, in part:

Determining Prohibited Activities:

(2) Presumptive Conflicts of Interest. A prohibited conflict of interest is presumed to exist where a member engages in an ongoing and continuous business, social or non-marital sexual relationship with another person, when:

. . . . .

(b) the other person has been imprisoned for or convicted of a felony within the past ten years. . . .

Spencer M. Neal, Ginsburg & Neal, Portland, OR, Lisa M. LeSage, Ginsburg & Neal, Hillsboro, OR, for plaintiff.

Laurence Kressel, County Counsel for Multnomah County, Steven J. Nemirow, Asst. County Counsel, Portland, OR, for defendant.

### OPINION

REDDEN, Chief Judge:

### PROCEDURAL BACKGROUND

Plaintiff, Kim Reuter, is a female corrections officer employed by Multnomah Coun-

(3) If a presumptive conflict of interest is shown to exist, the burden shall be upon the member to show their activity or relationship with the other person is unavoidable and would not endanger safety and security of Sheriff's Office operations or facilities, negatively impact the member's job performance, or create an unfavorable public perception of the Sheriff's Office. Sheriff's Work Rules, W.100.110.07, as amended.

In the fall of 1991, plaintiff became involved with an ex-inmate who was convicted of a felony within the last ten years. Plaintiff alleges that when she learned of this person's status as an "ex-inmate," she orally reported this relationship to the Sheriff's Office and then filed a written report dated October 18, 1991. At the time that plaintiff began her relationship with the ex-felon, the sheriff's rules did not make her association with a person who was convicted of a felony within the past ten years a "presumptive conflict of interest."

In October 1992, plaintiff's relationship with the ex-inmate again became the subject of the Sheriff's Office scrutiny and another investigation was undertaken. On October 20, 1992, plaintiff was suspended from her employment from the Sheriff's Office with pay. On December 17, 1992, plaintiff appeared before Major Slyter, Facilities Division Commander, who advised her that, in light of her expressed intention to continue her intimate association with an ex-felon, he would recommend that she be terminated from the Sheriff's Office. Slyter claimed that plaintiff's association with an ex-felon would create a potential compromise of the Sheriff's Office because of plaintiff's access to confidential records. In a letter dated Jan. 5, 1993, plaintiff was informed by John Schweitzer, Deputy Chief, Corrections Branch, that the allegations that she had violated the work rules were sustained and that her employment may be terminated.

Plaintiff alleges that defendant's conduct violates her right to associate in an intimate relationship in violation of the first amendment. Plaintiff also argues that defendant's conduct violates her right to privacy under the fourteenth amendment. Plaintiff seeks redress for both of these alleged violations pursuant to 42 U.S.C. § 1983.

Plaintiff files a motion for partial summary judgment on the issue of liability. Defendant files a cross motion for summary judgment. Plaintiff's motion is granted.

### STANDARDS

 Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The materiality of a fact is determined by the substantive law on the issue. *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc.,* 809 F.2d 626, 630 (9th Cir.1987). The authenticity of a dispute is determined by whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

 The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553.

 Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Electrical,* 809 F.2d at 630.

### DISCUSSION

1. *Standard of Review*

The first issue argued by the parties is the appropriate standard of review to be used by

the court for evaluating defendant's rule. Defendant argues that it should be one of "rational basis." In that case defendant must show that the work rule has at least a "rational connection" to the promotion of safety of persons and property. *See Kelley v. Johnson,* 425 U.S. 238, 247, 96 S.Ct. 1440, 1446, 47 L.Ed.2d 708 (1976).

■ Plaintiff contends that the standard is one of intermediate scrutiny. Intermediate scrutiny requires that governmental rules that restrict constitutional behavior "need only be tailored in a reasonable manner to serve a substantial state interest...." *Edenfield v. Fane,* —— U.S. ——, ——, 113 S.Ct. 1792, 1798, 123 L.Ed.2d 543 (1993).

■ I agree with plaintiff that the standard of review in this case should be one of intermediate scrutiny. I find that a couple living together as husband and wife constitute a "family" in today's society and is therefore entitled to protection from the state's intrusions, judged at a higher level of standard of review. When the state intrudes into the family unit, its rules must be tailored in a reasonable manner to serve a substantial state interest. I find that the state's professed interest in maintaining the "security" of the Sheriff's Office is not tailored in a reasonable manner to serve that state interest.

2. *Rational Relation*

■ Moreover, even assuming that a couple living together as husband and wife do not qualify as a "family" and therefore are not entitled to the intermediate level of review, I find that defendant's evidence of the rule being rationally related to issues of public and officer safety and security is minimal. Defendant has failed to offer sufficient evidence to support his contention that the work rule of which plaintiff complains is rationally connected to defendant's duty of security and safety in its jails.

As noted above, defendant's first work rule prohibited various relationships outside of the professional context if they "would jeopardize any investigation, prosecution or would reflect unfavorably upon the integrity of the member, the Sheriff's Office, or Sher-

iff." Under this rule, there must be some showing of harm to defendant, either by compromising an investigation or prosecution, or by besmirching the reputation of the member or employee.

Defendant's current work rule, promulgated November 20, 1992, after plaintiff was disciplined for her off-the-job association with her domestic partner, has the same restrictions as the earlier rule quoted above. New guidelines, however, are added for determining whether a relationship is prohibited, as is a set of presumptive conflicts of interest. The current rule also provides:

> W1.100.110.09 *Effect of Marriage of Involved Person* The Sheriff recognizes a member's fundamental right to marriage and procreation. However, if a member knows or has a reasonable basis to know their prospective spouse is an involved person prior to marriage, the member's subsequent marriage to the involved person shall not, in and of itself, justify a relationship which otherwise would constitute a conflict of interest; nor shall the member's marriage to the involved person constitute a defense to a complaint against the member brought under this rule.

In *Thorne v. City of El Segundo,* 726 F.2d 459 (9th Cir.1983), the court held that

> the City must show that its inquiry into appellant's sex life was justified by the legitimate interests of the police department, that the inquiry was narrowly tailored to meet those legitimate interests, and that the department's use of the information it obtained about appellant's sexual history was proper in light of the state's interests.

*Id.* at 469.

The court then held that the City failed to meet its burden:

> In the absence of any showing that private, off-duty, personal activities of the type protected by the constitutional guarantees of privacy and free association have an impact upon an appellant's on-the-job performance, and of specific policies with narrow implementing regulations, we hold that reliance on these private non-job-related considerations by the state in reject-

ing an applicant for employment violates the applicant's protected constitutional interests and cannot be upheld under any level of scrutiny.

*Id.* at 471. I find this standard appropriate here.

In *Fugate v. Phoenix Civil Service Board,* 791 F.2d 736 (9th Cir.1986), the court reiterated the holding in *Thorne,* stating that because Thorne's "private, off-duty sexual activities were protected, and because the city could demonstrate no impact upon an applicant's on-the-job performance and failed to show specific policies with narrow implementing regulations, the City's rejection of Thorne for employment was impermissible." *Id.* at 740. The court then distinguished *Thorne* because the officers in *Fugate* engaged in sexual relations while on the job and the City of Phoenix demonstrated that the officers' "job performance was threatened by obvious conflicts of interest as well as by the possibility of blackmail." *Id.* at 741. Because of these distinctions, the court found that the protection of the right of privacy found in *Thorne* did not apply and the city only had to satisfy the rational basis test of *Kelley v. Johnson,* 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976).

Similarly, in *Fleisher v. City of Signal Hill,* 829 F.2d 1491 (9th Cir.1987), a probationary police officer engaged in sexual conduct with a 15–year–old girl while both of them were Explorer Scouts with the police department. *Id.* at 1492. The police officer sued for damages pursuant to 42 U.S.C. § 1983 alleging violation of his right of privacy. *Id.* The court held that the department did not violate Fleisher's right of privacy by terminating him. The court stated that this conduct was "illegal, [and] inappropriate in an individual who aspired to become an officer on the Department's police force, and detrimental to the Department as a whole. The illegality of Fleisher's behavior creates a substantial barrier to successfully asserting a privacy claim...." *Id.* at 1498.

I find that plaintiff' situation is factually closer to *Thorne* rather than either *Fugate* or *Fleisher.* Plaintiff's intimate association with her domestic partner was only conducted off-duty and in private. Second, her private, off-duty sexual activities came to light only because she had to report them under the challenged work rule. Third, the Sheriff has made no showing that plaintiff's relationship with her domestic partner has had any impact on plaintiff's on-the-job performance, a showing that is required by *Thorne, Fugate* and *Fleisher.* Plaintiff alleges that the Sheriff has only raised speculative fears that the plaintiff is now untrustworthy because of her association with an ex-convict. Defendant's speculation is insufficient to meet the burden of proof that the Ninth Circuit has established. I further note an additional distinguishing feature between plaintiff's case and the facts in *Fugate* and *Fleisher;* her intimate relationship with an ex-convict, even if he is presently married to another person, is not in any way prohibited by the laws of the State of Oregon, as were the relationships in *Fleisher* and *Fugate.*

Plaintiff also cites as evidence the statements of two correctional professionals, Allen Breed and James Harrigan. Breed states in his affidavit that he is unaware of any jurisdiction having a rule as broad as the one at issue here. It is his opinion that such a rule goes far beyond any reasonable penological purpose and does not relate to the legitimate demands of the sheriff's office.

Harrigan is the legal counsel for the Sheriff of San Fransico. Its rules prohibit personal relationships between inmates and department employees. The rules do not, however, prohibit its employees from associating with persons away from the jail simply because those persons may have once been convicted of committing a crime. He is also unaware of any other sheriff's department that has a rule similar to the one at issue here.

Both experts stated that the rule was unworkable and not reasonably related to the needs of the Sheriff's Office.

The plaintiff next argues that defendant's rule also violates the state constitution which states, "Laws for the punishment of crime shall be founded on the principles of reformation, and not of vindictive justice." Art. I, Sec. 15. I agree that terminating plaintiff's employment with the county simply

because she is living with an ex-convict would continue to punish her domestic partner for a crime for which he has already paid his debt to society by penalizing his association with another.

The case relied on by defendant, *Kukla v. Village of Antioch*, 647 F.Supp. 799 (N.D.Ill. 1986), is distinguishable. There, a small village police department fired a sergeant and a dispatcher for living together as husband and wife without actually being married. The rule at issue there prohibited any socialization between employees of different ranks. The court found the small town size and small police force significant. There were only 16 employees on the entire force. The court held:

> If an Antioch sergeant developed a relationship with an Antioch patrolman or dispatcher, certain reactions are predictable, among them that other Antioch patrolmen or dispatchers would tiptoe lightly around certain subjects for fear of offending that sergeant. After all, in Antioch, offending one sergeant meant offending half of all the sergeants on the force. Given human nature, a belief that an intra-departmental relationship would negatively affect the department is more reasonable on a small force than a large one.

*Id.* at 810. The court noted that the Chicago police department would have a much more difficult task in justifying a discharge of a sergeant and a dispatcher for their off-duty living arrangements. *Id.* at 811. The court also relied upon the previous experience in the police department which "supported a belief in the likelihood of negative affects from such a relationship." *Id.* at 810. The court required that there be a factual predicate for the city's reasonable belief that the relationship would cause harm.

*Kukla* can be distinguished as follows: first, in *Kukla*, the police force was very small; therefore any intimate relationships between a sergeant and other officers would be obvious. In plaintiff's case, her relationship only came to light because she was required to report it. Second, in *Kukla*, the police department had problems in the past with supervisors dating subordinate officers because of the unwillingness of other officers

to report mistakes for fear of alienating the sergeants. Here, defendant has no history of problems caused by a corrections officer living with an ex-convict. Defendant has produced no evidence that the mere association of an officer with someone who had once been convicted of a felony in another state has caused any problems in the department. The court in *Kukla* required a reasonable basis for the city's rule. Here, the sheriff's rule lacks a reasonable basis.

I also find merit in plaintiff's argument regarding inconsistency with the rules that allow an employee with a family member in jail to visit and correspond with that family member "so long as the [employee] complies with the policies and procedures of the facility or program governing such conduct." W1.100.110.10.

Defendant's fear that plaintiff's relationship will cause her to compromise the safety and security of the jail is premised on the assumption that her relationship somehow creates a conflict of interest between her domestic partner and her official duties. Plaintiff points out that her domestic partner is not incarcerated so there is no occasion for a conflict of interest to arise.

Plaintiff relies on the deposition testimony of Sergeant Miller, an investigator with the Internal Affairs unit of the Multnomah County Sheriff's Office, and Chief Deputy Schweitzer, who is in charge of the corrections branch of the sheriff's office. Plaintiff argues that based on the testimony of these two officers that defendant's real reason for firing plaintiff was to achieve some consistency in the sheriff's discipline of correction officers. Sgt. Miller testified that there have been three female corrections officers who were suspended for being in relationships with ex-inmates. Chief Schweitzer testified that he had no evidence that the plaintiff's relationship with her domestic partner had caused any harm to the safety and security of any county jail facility, or that the relationship had caused any harm to her performance as a corrections officer, or that it had caused any harm to the public's perception of the Sheriff's Office.

Chief Schweitzer was questioned about his knowledge of the arrest and conviction of a corrections officer named Sgt. Asboe for "fraudulently obtaining drugs or narcotics." The officer was demoted (not fired) because "the determination was made that reduction in rank would suffice as a form of discipline in that case." Schweitzer admitted that there was a "possibility" that Asboe's conviction made him susceptible to blackmail or pressure by the inmates.

Defendant focuses on the fact that Troutdale Police officers saw plaintiff in her uniform, "kissing and hugging a known felon in front of a bar just four blocks from the Troutdale police station." Defendant's Opposition, p. 2. Plaintiff responds that it has not been established that the public in general knew of the criminal record of plaintiff's domestic partner. Defendant submits only the affidavit of Troutdale Police Chief Collier, who claims that plaintiff's domestic partner is a known felon. Collier fails to state who knows this fact except his officers, and it is not even clear from the affidavit that his officers know this fact. Further, I note that plaintiff is not being disciplined for public displays of affection.

Defendant next claims that one of his lieutenants, Lt. Goss, informally interviewed plaintiff and warned her that this association could jeopardize her career. Plaintiff responds that the record is undisputed that after the 1991 investigation of her relationship, she was never ordered by anyone to terminate it. Plaintiff asserts that what defendant is now claiming to be a breach of security and professional ethics was insufficient to prompt any formal action from the Sheriff's Office when investigated in 1991.

### CONCLUSION

Plaintiff's motion for partial summary judgment on the issue of liability is granted. I find that plaintiff's relationship with her domestic partner qualifies as a family and therefore is entitled to an intermediate standard of review. Intermediate scrutiny requires that governmental rules that restrict constitutional behavior be tailored in a reasonable manner to serve a substantial state interest. Defendant's work rule fails to be reasonably tailored to serve the state's interest of security and protection of the jail facility. Moreover, even if defendant's work rule is examined under the rational relation standard of review, I find no rational connection between the rule and the promotion of safety of persons and property. Defendant's motion for summary judgment is denied.