CITY OF SHERMAN, Petitioner,

v.

Otis HENRY, Respondent.

No. 95–1195.

Supreme Court of Texas.

Argued Feb. 14, 1996.

Decided July 8, 1996.

Rehearing Overruled Sept. 19, 1996.

Ronald H. Clark, Sherman, for Petitioner.

Robert E. Richardson, Jr., Sherman, for Respondent.

ABBOTT, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, and GONZALEZ, HECHT, CORNYN, ENOCH and BAKER, Justices, join.

The City of Sherman Police Chief denied Patrolman Otis Henry a promotion to the rank of sergeant because Henry was having a sexual affair with the wife of a fellow police officer. The Firemen's and Police Officers' Civil Service Commission of the City of Sherman, Texas (the Commission) upheld that decision by finding that the Police Chief had a valid reason for not promoting Henry. Henry appealed to district court which held that the basis of the Police Chief's decision violated Henry's right to privacy under the United States and Texas Constitutions and was not a valid reason for denying the promotion. Accordingly, the district court ordered the promotion of Henry. That decision was affirmed by the court of appeals. 910 S.W.2d 542. We reverse the judgment of the court of appeals and hold that Henry's constitutional rights were not violated when he was denied a promotion for having a sexual affair with another officer's wife.

I

Sergeant Tom Pollard and Dispatcher Kelly Olson worked for the Sherman Police Department. Pollard and Olson were married in September 1989, but kept their marriage secret for nearly two years because they believed the police department had a nepotism policy prohibiting marriage between employees.

Henry and Olson developed a relationship in April 1991 that progressed into a sexual affair. When the relationship began, Henry knew that Olson and Pollard lived together and were dating, but he did not know they were married. In June 1991, Olson admitted to Henry that she was married to Pollard. A month later, Olson and Pollard informed the department they were married. Olson and Pollard separated in December 1991 and Pollard filed for divorce. Meanwhile, the sexual affair between Henry and Olson continued.

Police Chief Stephen Pilant first heard allegations of the affair in the late summer or early fall of 1991. After that, Chief Pilant noticed that Pollard seemed distraught on occasion and missed work due to illness. Rumor and innuendo about the affair increased in December 1991, about the same time it became known in the department that a sergeant's position would become available in January 1992.

Henry ranked first on the city's civil service list of eligible candidates for promotion to the sergeant's position. Additionally, Henry had completed all Texas Commission on Law Enforcement certification procedures, earned a bachelor's degree in criminal justice, received numerous commendations, and was honored as "Outstanding Officer of the Year" in 1991. Absent a valid reason to the contrary, Henry was entitled to the promotion to sergeant. See TEX. LOC. GOV'T CODE § 143.036(f).

In mid-January, and before making the promotion decision, Chief Pilant asked Lieutenant Mayo to investigate the validity of the rumors regarding Henry's relationship with Olson. The investigation consisted of Lieutenant Mayo getting from Pollard a memorandum detailing facts about the affair and a love letter from Henry to Olson. Pollard's memorandum simply described how he had already verified the existence of the affair. The record reveals that several months *before* Chief Pilant requested an informal investigation, Pollard had already confirmed the affair between Olson and Henry. Moreover, Pollard did not engage in clandestine conduct to "investigate" the affair; instead, he discovered Olson and Henry together while he was driving on the public streets. He also found in his own home love letters from Henry to Olson. Mayo did not pursue further investigation after receiving Pollard's memorandum, and he did not interrogate Henry or anyone else about the matter.

On January 17, 1992, a sign appeared on a department bulletin board and in the departmental mailboxes of most police officers that stated in its entirety: "If you can't trust another officer with your wife, how can you trust him with your life?" Henry assumed the author directed the jab at him and complained about the sign to Lieutenant Mayo and another Lieutenant. Henry also re-

quested an investigation by the Internal Affairs Division.

One month later, Chief Pilant announced that Henry would be passed over for the promotion. In a written memorandum, Chief Pilant stated the reason for denying the promotion was his belief that Henry would not command respect and trust from rank-and-file officers and that promoting Henry would adversely affect the efficiency and morale of the department. Chief Pilant orally expressed to Henry that the sole basis of these conclusions was the affair Henry had with Olson.

Henry appealed Chief Pilant's decision to the Commission. At the hearing, Chief Pilant admitted that Henry was very qualified for the sergeant's position. Nevertheless, Pilant testified that he did not promote Henry because of the impact the relationship between Henry and Olson would have both on Henry's ability to perform his work and on the morale of the department. As evidence that the affair was disruptive, the Chief pointed to the rumors and innuendo among officers, the sign posted on the bulletin board, and the emotional distress suffered by Pollard. The Chief acknowledged that he had never before passed over a candidate for promotion and that there was no written rule in the department's manual or in state law authorizing him to deny Henry's promotion due to the affair. He also conceded that there was never any indication that Henry and Olson engaged in sex while on duty. Nonetheless, the Chief stated he had an unwritten policy that he would not promote anyone having an affair with the spouse of a fellow officer.

In explaining why the affair established a valid reason for not promoting Henry, Pilant stated:

A police officer, by the very nature of his work, often times must put his complete faith and trust in fellow officers, to some point even as much as trust him with his life. If a police officer, in my opinion, cannot be trusted to take care of and protect a fellow officer's family ..., you would have serious doubts about whether that police officer can be trusted with your own life. It also hinders the harmony of police officers between each other.

Several more witnesses testified at the Commission hearing that the affair adversely affected the department and that Henry's promotion would have a detrimental impact on morale and on Henry's ability to perform his job. That evidence was contested by testimony from Henry and Olson.

After hearing all of the evidence presented by the City and by Henry, the Civil Service Commission voted unanimously that Chief Pilant had a valid reason for not promoting Henry. Henry appealed the Commission's decision to state district court where both Henry and the City of Sherman moved for summary judgment. Significantly, neither party challenged the Commission's fact findings or claimed the Commission's decision was not based on substantial evidence. Indeed, both parties submitted their summary judgment motions to the district court upon stipulated facts. One of the stipulated facts was that Henry was denied the promotion because he had a sexual affair with Olson.

Based upon the stipulated facts, both parties requested the district court to decide whether the evidence considered by the Commission demonstrated a valid reason for denying Henry's promotion. Henry argued the reason was invalid because his conduct was protected by the United States and Texas Constitutions. The City argued that the stipulated reason for not promoting Henry was constitutionally valid. The district court agreed with Henry, granted his motion for summary judgment, ordered his promotion with back pay, and granted him attorney's fees in the amount of $36,343.75. The court of appeals affirmed the district court, holding that Henry's constitutional rights were violated when he was denied a promotion because of his sexual affair with Olson.

During the oral argument of this case, the parties represented that, after the trial court's judgment, Henry was promoted to sergeant and the Pollards subsequently remarried. Thus, the issue for us to decide is whether Henry is entitled to the back pay and the attorney's fees awarded to him by the trial court. To make that determination, we must decide whether the Police Chief's

reason for denying Henry the promotion infringed upon Henry's constitutional rights. Because both parties have a financial interest in the outcome of the case, a contested case and controversy has been presented which must be decided by the Court. *Camarena v. Texas Employment Comm'n,* 754 S.W.2d 149, 151 (Tex.1988); *cf. Speer v. Presbyterian Children's Home,* 847 S.W.2d 227, 229 (Tex.1993). Neither Henry nor the City of Sherman claim the case is moot, and both parties have squarely presented the constitutional issue to this Court for resolution.

## II

Chief Pilant could properly deny the promotion to Henry for a "valid reason." Section 143.036(f) of the Texas Local Government Code provides:

> Unless the department head has a *valid reason* for not appointing the person, the department head shall appoint the eligible promotional candidate having the highest grade on the eligibility list.... On application of the bypassed eligible promotional candidate, the reason the department head did not appoint that person is subject to review by the commission.

Tex. Loc. Gov't Code § 143.036(f)(emphasis added). The Commission upheld Chief Pilant's reason for not promoting Henry even though Henry had the highest grade on the eligibility list at the time the promotion was available.

■ An appeal of the Commission's decision to district court is authorized by Section 143.015 of the Local Government Code.[1] Ordinarily, judicial review of the Commission's decision requires application of the substantial evidence test. *See Texas State Bd. of Dental Examiners v. Sizemore,* 759 S.W.2d 114, 116–17 (Tex.1988), *cert. denied,* 490 U.S. 1080, 109 S.Ct. 2100, 104 L.Ed.2d 662 (1989); *Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer,* 662 S.W.2d 953, 956 (Tex.1984).

In this case, however, traditional substantial evidence analysis is not required because neither party challenges the Commission's fact findings or claims the Commission's decision was not based on substantial evidence. As a result, substantial evidence to support the Commission's ruling is presumed. The focus of Henry's appeal to the district court, the focus of the court of appeals, and thus our concern, is whether the reason for not promoting Henry—having a sexual affair with the wife of another officer—is constitutionally valid. Accordingly, if the reason for denying Henry's promotion is constitutional, the substantial evidence test is satisfied, the promotion is properly denied, and the judgment of the court of appeals is reversed.

## III

Henry maintains his conduct is protected by the right to privacy under both the United States and Texas Constitutions. Neither Constitution expressly provides a right of privacy. Indeed, neither Constitution even contains the word "privacy." However, the United States Supreme Court has recognized that at least two different kinds of privacy interests are protected by the United States Constitution.

■ The first type of privacy protects an individual's interest in avoiding the disclosure of personal information. *Whalen v. Roe,* 429 U.S. 589, 599, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977). This interest is the "right to be let alone," which has been characterized as "the right most valued by civilized men." *Id.* at 599 & n. 25, 97 S.Ct. at 876 & n. 25 (quoting *Olmstead v. United States,* 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928)(Brandeis, J., dissenting)). The second constitutionally protected privacy interest is the right to make certain kinds of important decisions and to engage in certain kinds of conduct. *Whalen,* 429 U.S. at 600, 97 S.Ct. at 876–77. This interest protects individual autonomy in making decisions and conduct relating to marriage, procreation, contraception, family relationships, child rearing, and education. *Id.* at 600 & n. 26, 97 S.Ct. at

---

1. Section 143.015 states:
   (a) If a fire fighter or police officer is dissatisfied with any commission decision, the fire fighter or police officer may file a petition in district court asking that the decision be set aside.
   Tex. Loc. Gov't Code § 143.015.

876–77 & n. 26. The first privacy interest focuses on government action that is intrusive or invasive; the second concerns decisions or conduct by individuals. The United States Supreme Court and lower federal courts have consistently recognized the dichotomy between these two distinct aspects of the privacy right. *See, e.g., United States v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 762, 109 S.Ct. 1468, 1476, 103 L.Ed.2d 774 (1989); *Bellotti v. Baird,* 443 U.S. 622, 655, 99 S.Ct. 3035, 3054, 61 L.Ed.2d 797 (1979)(Stevens, J., concurring); *Woodland v. City of Houston,* 940 F.2d 134, 138 (5th Cir.1991); *Fleisher v. City of Signal Hill,* 829 F.2d 1491, 1497 n. 5 (9th Cir.1987), *cert. denied,* 485 U.S. 961, 108 S.Ct. 1225, 99 L.Ed.2d 425 (1988); *Thorne v. City of El Segundo,* 726 F.2d 459, 468 (9th Cir.1983), *cert. denied,* 469 U.S. 979, 105 S.Ct. 380, 83 L.Ed.2d 315 (1984); *Schachter v. Whalen,* 581 F.2d 35, 37 (2d Cir.1978).

In *Texas State Employees Union v. Texas Department of Mental Health & Mental Retardation,* 746 S.W.2d 203 (Tex.1987)(hereinafter *TSEU* ), this Court noted that the Texas Constitution contains "several provisions similar to those in the United States Constitution that have been recognized as implicitly creating protected 'zones of privacy.' " *Id.* at 205. We also noted that "a right of individual privacy is implicit among those 'general, great, and essential principles of liberty and free government' established by the Texas Bill of Rights." *Id.* (quoting TEX. CONST. art. I, Introduction to the Bill of Rights).

In *TSEU,* the Texas Department of Mental Health and Mental Retardation had instituted a mandatory polygraph policy requiring employees to submit to a polygraph during the course of an investigation of suspected patient abuse, theft, or other criminal behav-

ior. *Id.* at 204. The case did not concern the constitutionality of individual conduct; instead it focused on the constitutionality of the governmental intrusion. Obviously, patient abuse or criminal behavior is not constitutionally protected by the autonomy aspect of privacy. The government could typically regulate such conduct or make an employment decision based on such conduct. But the government nevertheless does not have license to intrusively pry into the affairs of its employees. Thus, we held in *TSEU* that the Texas Constitution protected the personal privacy of the employees from the unreasonable intrusion of the mandatory polygraph policy. *Id.* at 205–06. The meaning of *TSEU* was not that the employees' conduct was constitutionally protected; but rather that the government impermissibly intruded on the employees' "right to be let alone."

Henry's claim presents the opposite scenario. Henry does not claim that Chief Pilant or the City of Sherman invaded his right to be let alone. Similarly, he does not complain that the government's method of obtaining information regarding his affair with Olson constituted any type of intrusion into his personal life. Instead, Henry urges that the *basis* of Chief Pilant's decision (Henry's adulterous affair with another officer's wife) was invalid because it violated his constitutionally protected privacy rights. This is a claim only under the autonomy aspect of the right to privacy—the right to make certain fundamental decisions and engage in certain conduct without state interference. Thus, the sole issue for our review is whether conduct involving an affair by one police officer with the wife of another officer is a fundamental, constitutionally protected right.[2] We will not address or express any

---

2. Both of the concurrences object to the manner in which the controlling issue in this case has been framed. *Infra,* 928 S.W.2d at 474 & 476. Despite their protestations, however, the primary issue framed by Henry, the City, and the court of appeals was whether Henry's sexual conduct with the wife of another officer was a constitutionally impermissible basis to pass him over for promotion. 910 S.W.2d at 549–50. The actual language used by Henry is: "The court below did not err in rendering judgment requiring Appellant City to promote Appellee Henry, because the sole reason relied upon by the City for denial of

Appellee's promotion was constitutionally infirm, and cannot, therefore, constitute a 'valid reason' as mandated by TEX. LOC. GOV'T CODE ANN. § 143.036(f)." Later in his briefing, Henry claims that "there can be no question that the sole and only reason that Sherman Police Patrolman Otis Henry was denied his rightful promotion was his private affair with Kelly Olson/Pollard."

Justice Spector's concurrence claims that this case does not involve whether a right to privacy protected Henry's conduct, but rather whether "our constitution protects the relationship from

opinion on whether Henry could have maintained an action against the City of Sherman for unreasonably investigating his private affairs since that argument is not in issue.

### A

The United States Supreme Court has construed the United States Constitution to confer a limited right of privacy for individuals to make certain fundamental decisions or engage in certain conduct. *Whalen,* 429 U.S. at 600, 97 S.Ct. at 876–77. In *Bowers v. Hardwick,* 478 U.S. 186, 190, 106 S.Ct. 2841, 2843–44, 92 L.Ed.2d 140 (1986), the Supreme Court thoroughly analyzed this right to privacy and concluded that its scope has been limited to child rearing and education, *see Pierce v. Society of Sisters,* 268 U.S. 510, 534–35, 45 S.Ct. 571, 573–74, 69 L.Ed. 1070 (1925) and *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923); family relationships, *see Prince v. Massachusetts,* 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944); procreation, *see Skinner v. Oklahoma,* 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); marriage, *see Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); contraception, *see Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972) and *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); and abortion, *see Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

*Bowers* concerned a challenge to Georgia's sodomy statute brought by a homosexual adult male who had been charged with (but not indicted for) violating the sodomy law. The Court ruled there was no fundamental right to engage in homosexual sodomy. 478 U.S. at 191, 106 S.Ct. at 2844. In so doing, it emphasized that its prior decisions do not "stand for the proposition that any kind of private sexual conduct between consenting adults is constitutionally insulated." *Id.* The Court reasoned that there was no resemblance or connection between the claimed constitutional right to engage in homosexual sodomy and the recognized privacy rights concerning marriage, procreation, and family. *Id.* at 190–91, 106 S.Ct. at 2843–44.

The *Bowers* Court also analyzed whether it should recognize a substantive due process right for homosexual activity under the Fourteenth Amendment. It held that only those rights which are "implicit in the concept of ordered liberty" such that "neither liberty nor justice would exist" if they were sacrificed, or those liberties which are "deeply rooted in this Nation's history and tradition" receive constitutional protection under the substantive component of the due process clause. *Id.* at 191–92, 106 S.Ct. at 2844 (quoting *Palko v. Connecticut,* 302 U.S. 319, 325–26, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937) and *Moore v. East Cleveland,* 431 U.S. 494, 503, 97 S.Ct. 1932, 1937–38, 52 L.Ed.2d 531 (1977)). The Court held that neither of these formulations applied to create a fundamental right for homosexuals to engage in acts of consensual sodomy. *Id.* at 192, 106 S.Ct. at 2844.

In reviewing the history of sodomy, the Court noted it was a criminal offense at common law, forbidden by all the original thirteen states when they ratified the Bill of Rights, and the vast majority of the states when the Fourteenth Amendment became the law of the land. *Id.* at 192–93, 106 S.Ct. at 2844–45. The Court concluded that, based on this history, the claim that the right to engage in homosexual sodomy was "implicit in the concept of ordered liberty" or "deeply rooted in this Nation's history and tradition" was, at best, facetious. *Id.* at 194, 106 S.Ct. at 2846.

Using the Supreme Court's framework, we conclude that Henry's affair with Pollard's wife is unlike the recognized privacy rights concerning child rearing, family relationships, procreation, marriage, contraception, and abortion. Indeed, Henry's adulterous

---

intrusion by the government in the absence of a compelling state interest." 928 S.W.2d at 475. That issue heretofore has been a stranger to this litigation. Neither Henry nor the City briefed or analyzed the constitutional issue involving intrusion.

Justice Owen's concurrence argues that we should *assume* that Henry had a constitutional right and then determine that any intrusion on this right was justified. *Id.* at 476. The problem with this approach is that it assumes the only issue the parties ask us to decide. We will not side-step that issue.

conduct is the very antithesis of marriage and family. Adultery, by its very nature, undermines the marital relationship and often rips apart families. Rather than suffering an invasion of privacy, Henry invaded the "privacy surrounding the marriage relationship" so revered by Justice Douglas in *Griswold.* 381 U.S. at 486, 85 S.Ct. at 1682.

Moreover, sexual relations with the spouse of another is not a right that is "implicit in the concept of ordered liberty" or "deeply rooted in this Nation's history and tradition." Prohibitions against adultery have ancient roots. In the latter half of the 17th century in England, adultery was a capital offense. 4 WILLIAM BLACKSTONE, COMMENTARIES *64. The common law brought to this country by the American colonists included the crime of adultery as previously defined by the canon law of England. *United States v. Clapox,* 35 F. 575, 578 (D.Or.1888); FRANCIS WHARTON, A TREATISE ON CRIMINAL LAW vol. 11, §§ 1719–20, p. 524 (9th ed. 1885). Adultery was still considered a crime by courts and commentators in the latter half of the 19th century when the Fourteenth Amendment was ratified. *See Clapox,* 35 F. at 578; WHARTON, *supra.* In fact, adultery is a crime today in half of the states and the District of Columbia.[3]

While other states, including Texas, have recently repealed laws criminalizing adultery, the mere fact that such conduct is no longer illegal in some states does not cloak it with constitutional protection. Even in most states where adultery is not criminal behavior, civil laws still burden those engaging in adulterous activity. *See* Note, *Constitutional Barriers to Civil and Criminal Restrictions on Pre- and Extramarital Sex,* 104 HARV. L. REV. 1660, 1672–74 (1991). A right to engage in adultery simply cannot be said to be either "implicit in the concept of ordered liberty" or "deeply rooted in this Nation's history and tradition."

Our conclusion that adultery is not a fundamental right protected under the United States Constitution is buttressed by dicta contained in several Supreme Court opinions. Justice Goldberg's concurrence in *Griswold,* which was joined by Chief Justice Warren and Justice Brennan, stated that the constitutionality of statutes prohibiting adultery and fornication was "beyond doubt." 381 U.S. at 498, 85 S.Ct. at 1689 (Goldberg, J., concurring). Similarly, the Court in *Bowers* expressed concern that, if it granted a right of privacy to homosexual conduct, "adultery, incest, and other sexual crimes" would also be protected. 478 U.S. at 195–96, 106 S.Ct. at 2846–47. The Court opined that it was "unwilling to start down that road." *Id.* at 196, 106 S.Ct. at 2846. Even the dissenting justices in *Bowers* (Justices Blackmun, Brennan, Marshall, and Stevens) claimed that a court "could find simple, analytically sound distinctions between certain private, consensual sexual conduct, on the one hand, and adultery . . . on the other." *Id.* at 209 n. 4, 106 S.Ct. at 2853 n. 4 (Blackmun, J., dissenting). One major distinction noted by the dissent was that adultery often injures third persons, such as spouses and children. *Id.* Thus, every justice in the *Bowers* case joined an opinion that either equated adultery with homosexual conduct or concluded that adultery was more egregious than homosexual conduct. Because homosexual conduct is not a fundamental right under the United States

---

**3.** Twenty-five states and the District of Columbia still provide criminal penalties for adultery. ALA. CODE § 13A–13–2 (1982); ARIZ.REV.STAT. ANN. §§ 13–1408–1409 (1989); COLO. REV. STAT. § 18–6–501 (1981); D.C.CODE § 22–301 (1981); FLA. STAT. § 789.01 (1976); GA.CODE ANN. § 16–6–19 (1988); IDAHO CODE § 18–6601 (1987); ILL. REV. STAT. § 720 5/11–7 (1990); KAN. STAT. ANN. § 21–3507 (1991); MD. ANN.CODE art. 27, § 4 (1987); MASS. ANN. LAWS ch. 272, § 14 (1991); MICH. COMP. LAWS ANN. § 750.30 (1991); MINN. STAT. § 609.36 (1987); MISS.CODE ANN. § 97–29–1 (1973); NEB. REV. STAT. § 28–704 (1989); N.H.REV.STAT. ANN. § 645:3 (1986); N.Y. PENAL LAW § 255.17 (1989); N.C. GEN. STAT. § 14–184 (1990); N.D. CENT.CODE § 12.1–20–09 (1991); OKLA. STAT. ANN. tit. 21, § 871 (1983); R.I. GEN. LAWS § 11–6–2 (1990); S.C.CODE ANN. §§ 16–15–60, 16–15–70 (1985); UTAH CODE ANN. § 76–7–103 (1990); VA.CODE ANN. § 18.2–365 (1988); W. VA.CODE § 61–8–3 (1989); WIS. STAT. ANN. § 944.19 (1982). Coincidentally, when the *Bowers* opinion was issued in 1986, twenty-five states and the District of Columbia had criminal penalties for sodomy. *See* 478 U.S. at 193–94, 106 S.Ct. at 2845–46. The *Bowers* holding that the right to engage in homosexual conduct was not constitutionally protected was based, in part, on the fact that half the states still criminalized the conduct. *See id.*

Constitution, adultery likewise cannot be a fundamental right.

Several federal courts of appeals have followed the *Bowers* decision to conclude that certain types of sexual conduct are not constitutionally protected. *E.g., Steffan v. Perry,* 41 F.3d 677, 684 n. 3 (D.C.Cir.1994)(en banc); *Schowengerdt v. United States,* 944 F.2d 483, 490 (9th Cir.1991), *cert. denied,* 503 U.S. 951, 112 S.Ct. 1514, 117 L.Ed.2d 650 (1992); *Walls v. City of Petersburg,* 895 F.2d 188, 193 (4th Cir.1990); *Ben–Shalom v. Marsh,* 881 F.2d 454, 464–65 (7th Cir.1989), *cert. denied,* 494 U.S. 1004, 110 S.Ct. 1296, 108 L.Ed.2d 473 (1990); *Woodward v. United States,* 871 F.2d 1068, 1074 (Fed.Cir.1989), *cert. denied,* 494 U.S. 1003, 110 S.Ct. 1295, 108 L.Ed.2d 473 (1990); *Fleisher v. City of Signal Hill,* 829 F.2d 1491, 1498 (9th Cir. 1987), *cert. denied,* 485 U.S. 961, 108 S.Ct. 1225, 99 L.Ed.2d 425 (1988); *Padula v. Webster,* 822 F.2d 97, 102 (D.C.Cir.1987).

Similarly, several federal district courts have concluded that adultery is not protected by the right to privacy. *E.g., Oliverson v. West Valley City,* 875 F.Supp. 1465, 1480 (D.Utah 1995)("Extramarital sexual relationships are not within the penumbra of the various constitutional provisions or the articulated privacy interests protected by the Constitution"); *Suddarth v. Slane,* 539 F.Supp. 612, 617 (W.D.Va.1982)(holding that federal privacy rights do not include protection for adultery); *Johnson v. San Jacinto Junior College,* 498 F.Supp. 555 (S.D.Tex.1980)(stating that right to privacy does not protect adulterous conduct).

Despite this authority, Henry claims that two lower federal court cases establish that his conduct is protected by a constitutional right to privacy. In *Briggs v. North Muskegon Police Dep't,* 563 F.Supp. 585 (W.D.Mich. 1983), *aff'd mem.,* 746 F.2d 1475 (6th Cir. 1984), *cert. denied,* 473 U.S. 909, 105 S.Ct. 3535, 87 L.Ed.2d 659 (1985), a Michigan federal district court held that Briggs' right of sexual privacy was infringed when Briggs, a married man, was fired from his police officer position for living with a married woman who was not his wife. In *Thorne v. City of El Segundo,* 726 F.2d 459 (9th Cir.1983), *cert. denied,* 469 U.S. 979, 105 S.Ct. 380, 83 L.Ed.2d 315 (1984), the appellate court ruled that Ms. Thorne's right to privacy had been infringed when she was denied employment as a police officer because, among other things, she stated in response to polygraph questions that she had become pregnant by an officer on the police force who was married to another woman.

We are unpersuaded by *Briggs* and *Thorne.* *Thorne* involved a polygraph and was based in part on an individual's interest in avoiding disclosure of personal matters, an interest not implicated in this case. Moreover, both *Thorne* and *Briggs* were issued prior to the Supreme Court's decision in *Bowers* and both decisions fail to provide the detailed analysis required by the Supreme Court to determine whether the conduct was "implicit in the concept of ordered liberty" or "deeply rooted in the traditions of our Nation." Instead, the courts summarily concluded that private sexual conduct was protected by the United States Constitution.

Indeed, the author of *Bowers,* Justice White, dissented from the decision to deny certiorari in the *Briggs* case, stating: "This case presents an important issue of constitutional law regarding the contours of the right of privacy afforded individuals for sexual matters. It is an issue over which courts are divided, and I would grant certiorari to address it squarely." *Briggs,* 473 U.S. at 910, 105 S.Ct. at 3536. In *Bowers,* Justice White and the Supreme Court took the opportunity to clarify the contours of the right to privacy regarding sexual matters.

The other cases relied upon by Henry, *Wilson v. Taylor,* 733 F.2d 1539 (11th Cir. 1984), and *Rutan v. Republican Party,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990), are freedom of association and freedom of political expression cases and are irrelevant to Henry's claim to a privacy right.

■ We conclude that the right to privacy under the United States Constitution does not include the right to maintain a sexual relationship with the spouse of someone else. Such conduct is the antithesis of the constitutionally protected rights of marriage and family; a right to engage in that conduct can hardly be said to be "implicit in the concept

of ordered liberty" or "deeply rooted in this Nation's history and tradition." We turn now to Henry's claim to a privacy right under the Texas Constitution.

### B

Although the Texas Constitution does not expressly provide a right of privacy, our opinion in *TSEU* recognized constitutionally protected zones of privacy emanating from several sections of article I of the Texas Constitution: section 6, concerning freedom of worship; section 8, concerning freedom of speech and press; section 9, concerning searches and seizures; section 10, concerning the rights of an accused in criminal prosecutions; section 19, concerning deprivation of life, liberty and property, and due course of law; and section 25, concerning quartering soldiers in houses. *TSEU*, 746 S.W.2d at 205. No court has recognized any other provision of the Texas Constitution as establishing a right to privacy.[4] Other than section 19, none of these provisions even remotely addresses the situation of an individual who is denied a promotion because he is having an affair with the wife of someone else. We are thus faced with the task of determining whether Henry's conduct is protected by article I, section 19 of the Texas Constitution.

The method to interpret and apply the Texas Constitution has been defined as follows:

In construing [a section of the Texas Constitution], we consider "the intent of the people who adopted it." In determining that intent, "the history of the times out of which it grew and to which it may be rationally supposed to have direct relationship, the evils intended to be remedied and the good to be accomplished, are proper

subjects of the inquiry." However, because of the difficulties inherent in determining the intent of voters over a century ago, we rely heavily on the literal text.

*Edgewood v. Kirby*, 777 S.W.2d 391, 394 (Tex.1989) (citations omitted); *see also Ex parte Tucci*, 859 S.W.2d 1, 18 (Tex.1993)(Phillips, C.J., concurring) and *Davenport v. Garcia*, 834 S.W.2d 4, 10 (Tex. 1992). Another articulation of this standard states that we:

"look to such things as the language of the constitutional provision itself, its purpose, the historical context in which it was written, the intentions of the framers [and ratifiers], the application in prior judicial decisions, the relation of the provision to [other parts of the constitution and] the law as a whole, the understanding of other branches of government, the law in other jurisdictions, state and federal, constitutional and legal theory, and fundamental values including justice and social policy."

*Ex parte Tucci*, 859 S.W.2d 1, 18 n. 3 (Tex.1993)(Phillips, C.J., concurring)(unbracketed material quoting *Davenport v. Garcia*, 834 S.W.2d at 30 (Hecht, J., concurring)).

Applying this method of constitutional analysis, there is no reason to believe that article I, section 19 of the Texas Constitution provides a right of privacy for Henry's conduct. That constitutional provision states:

No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land.

This language is remarkably similar to the Fourteenth Amendment to the United States Constitution[5] upon which the United States

---

**4.** Other than in *TSEU*, this Court has not examined the right of privacy under the Texas Constitution. However, the Third Court of Appeals relied on *TSEU* to analyze this state's right of privacy in *State v. Morales*, 826 S.W.2d 201, 204–05 (Tex.App.—Austin 1992)(holding that the state sodomy statute violated the Texas Constitution), *rev'd*, 869 S.W.2d 941 (Tex.1994). Because we concluded that neither the district court nor the court of appeals in *Morales* possessed jurisdiction to issue a declaration regarding the constitutionality of the criminal sodomy statute, we reversed

the judgment of the court of appeals and remanded the case to the trial court with instructions to dismiss for want of jurisdiction, without reviewing or expressing an opinion on the court of appeals' discussion regarding the scope of the right to privacy. *See* 869 S.W.2d at 942.

**5.** The Fourteenth Amendment provides: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without

Supreme Court has relied when defining right to privacy parameters. While the Texas Constitution has been recognized to possess independent vitality, separate and apart from the guarantees provided by the United States Constitution, *see In the Interest of J.W.T.*, 872 S.W.2d 189, 197 (Tex.1994) and *LeCroy v. Hanlon*, 713 S.W.2d 335, 339 (Tex. 1986), there is no reason to expand Texas constitutional protections to protect Henry's conduct.

Neither Henry nor Justice Spector's concurring opinion provides any support for the proposition that the framers or ratifiers of the Texas Constitution would have considered the right to have a sexual affair with the wife of another an essential component of life, liberty, or property. Nor has there been any showing that Henry's conduct is among those "general, great, and essential principles" of our government. In fact, when our state charter was ratified in 1876, article 392 of the Texas Penal Code of 1857 provided that adultery was a crime punishable by fine. A mere three years after the passage of the 1876 Texas Constitution, the Texas Legislature revised the Penal Code, but retained the provision criminalizing adultery. *See* TEX. PENAL CODE art. 336 (1879). The prohibition against adultery continued for almost a century until it was finally repealed in 1973. *See* Act of June 14, 1973, 63d Leg., R.S., ch. 399, § 3, 1973 Tex. Gen. Laws 883, 992, *repealing* TEX. PENAL CODE art. 499 (1925). While the constitution's framers may have been willing to die for the right of free expression, *see Davenport*, 834 S.W.2d at 7, there is no indication they were willing to make any sacrifice for the right to commit adultery.[6]

■ Implicitly conceding that the original intent of the Texas Constitution did not encompass a right to commit adultery, Henry contends his conduct is constitutionally protected because it is no longer illegal. However, there are two major fallacies with this argument. First, the mere fact that conduct is no longer illegal does not make it constitutionally protected. Adultery is no longer a statutory violation in Texas, but it is still not favored by the law. In fact, Texas specifically allows courts to consider adultery in granting a divorce or in dividing community assets. *See* TEX. FAM.CODE §§ 3.03, 3.63; *Young v. Young*, 609 S.W.2d 758, 761 (Tex. 1980); *Morrison v. Morrison*, 713 S.W.2d 377, 379 (Tex.App.—Dallas 1986, writ dism'd). Second, the fact that constitutional guarantees continue to evolve over time does not mean that we are allowed to create new guarantees that are not present in either the text or the intent of the constitution. Moreover, Henry's argument is illogical. To follow Henry's argument to its logical end would require us to rule that legislative action concerning any type of conduct would establish its constitutionality. Such an untenable position would place the Constitution at the mercy of the Legislature.

■ Accordingly, we find no basis for the argument that adultery is protected as a fundamental right under the Texas Constitution. Borrowing from the *Bowers* analysis, Henry's conduct is not a right implicit in the concept of liberty in Texas or deeply rooted in this state's history and tradition.

In concluding that Henry's conduct deserves constitutional protection, both Justice Spector's concurring opinion and the court of appeals ostensibly rely upon this Court's analysis in *TSEU*. *Infra*, 928 S.W.2d at 468;

---

due process of law...." We have previously recognized the textual similarity between article I, section 19 and the Fourteenth Amendment. *See, e.g., University of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 929 (Tex.1995); *Mellinger v. City of Houston*, 68 Tex. 37, 3 S.W. 249, 252–53 (1887).

**6.** Justice Spector's concurrence faults our analysis for resting "almost entirely on the fact that 'adultery was a crime' at the time our constitution was ratified." *Infra*, 928 S.W.2d at 476. This mischaracterizes our rationale. We first examined the text of our state charter, and, finding no express provision protecting Henry's activity, we then analyzed whether there was any historical basis for the conclusion that the right to commit adultery was an essential component of life, liberty, or property. While we analyzed the criminal law that existed at the time of the constitution's ratification to assist us in our historical inquiry, the criminal law was not the dispositive factor in our decision. Moreover, there is nothing in our opinion today substantiating the concurrence's claim that we believe individual rights are "frozen in time, limited to conduct or actions that were legal and accepted more than one hundred years ago." *Id.* at 476.

910 S.W.2d at 551. However, as discussed previously, *TSEU* did not concern the constitutionality of individual conduct; instead it focused on the constitutionality of the government's intrusion. The sole issue presented in this case is whether conduct involving an affair by one police officer with the wife of another officer is a fundamental right. There is simply nothing in *TSEU* providing any support for the argument that adultery is such a fundamental right. Reliance on *TSEU* is therefore unfounded.

While the court of appeals nominally referred to *TSEU*, it did not apply the facts of this case to any of the constitutional provisions discussed in *TSEU*. Instead, the appellate court relied upon the analysis in *Fleisher v. City of Signal Hill,* 829 F.2d 1491 (9th Cir.1987), *cert. denied,* 485 U.S. 961, 108 S.Ct. 1225, 99 L.Ed.2d 425 (1988); *Thorne v. City of El Segundo,* 726 F.2d 459 (9th Cir. 1983), *cert. denied,* 469 U.S. 979, 105 S.Ct. 380, 83 L.Ed.2d 315 (1984); and *Fabio v. Civil Serv. Comm'n,* 489 Pa. 309, 414 A.2d 82 (1980). *Thorne,* which involved a polygraph, and *Fabio* were both decided before *Bowers.* In *Fleisher,* the Court actually relied upon *Bowers* to "hold that the [Police] Department did not violate Fleisher's right of privacy by terminating him because of his admitted misconduct." *Fleisher,* 829 F.2d at 1498. These cases simply do not provide any support for the argument that Chief Pilant could not consider Henry's conduct in making the promotion decision at issue in this case.

■ Considering the Texas Constitution as a whole and article I, section 19 in particular, the historical context in which the Texas Constitution was conceived and has lived, actions by the Texas Legislature, and judicial decisions, we conclude that the Texas Constitution does not provide a right of privacy for a police officer who was denied a promotion because he had a sexual affair with the wife of another police officer. This conclusion does not mean, however, that the government is free to engage in intrusive investigation methods to determine the sexual practices of individuals.

## IV

■ The City requests this Court to render judgment in its favor for attorney's fees. The Local Government Code provides that the trial court "may award reasonable attorney's fees to the prevailing party" in an appeal from a civil service determination. TEX. LOC. GOV'T CODE § 143.015(c). The use of the word "may" in the statute vests discretion in the trial court to either deny or award such fees. *See Turner v. City of Carrollton Civil Serv. Comm'n,* 884 S.W.2d 889, 895 (Tex.App.—Amarillo 1994, no writ). The trial court has not yet exercised its discretion with regard to this issue. Therefore, we remand this cause to the trial court for consideration of the City's attorney's fees request.

In conclusion, the failure to promote Henry for having a sexual affair with the wife of a fellow police officer did not implicate Henry's right to privacy under either the United States Constitution or the Texas Constitution. Because the parties otherwise concede that substantial evidence supports the Police Chief's decision not to promote Henry, we reverse the judgment of the court of appeals and render judgment in favor of the City of Sherman. We remand to the trial court to determine the attorney's fees, if any, which should be awarded to the City as the prevailing party in this cause.

SPECTOR and OWEN, JJ., concur.

SPECTOR, Justice, concurring.

Nine years ago, the right of privacy under the Texas Constitution prevented the state from asking employees whether they had ever stolen or whether they had beaten their children. *See Texas State Employees Union v. Texas Dep't of Mental Health and Mental Retardation,* 746 S.W.2d 203, 204, 206 (Tex. 1987). Today, the majority announces that the Texas constitutional right of privacy has somehow shriveled to the point that the most personal aspects of our lives are the government's business. The majority seizes the opportunity to abridge this fundamental right in a case in which the core dispute between the parties is moot: Otis Henry, who filed this suit after he was denied a promotion because he had an affair with Ser-

geant Tom Pollard's wife, has long since been promoted. The Pollards have divorced, reconciled, and remarried. I concur in the Court's judgment, but I cannot join in a gratuitous opinion that so narrowly and unreasonably circumscribes a precious fundamental right.

In *TSEU*, a unanimous Court expressed no doubt "that a right of individual privacy is implicit among those 'general, great, and essential principles of liberty and free government' established by the Texas Bill of Rights." *Id.* at 205 (citing TEX. CONST., art. I, Introduction to the Bill of Rights). Then, we held that "the Texas Constitution protects personal privacy from unreasonable intrusion." *Id.* That was then.

In order to pronounce its views on morality (and transform them into law), the majority resorts to a time-honored rhetorical tactic: Reframe the issue in a way that assures the answer you want. This case is no more about Henry's fundamental "right to have a sexual affair with the wife of another," *supra,* 928 S.W.2d at 473, than *TSEU* was about the fundamental right of public employees to conceal theft or child abuse; instead, "this case is about 'the most comprehensive of rights and the right most valued by civilized men,' namely, 'the right to be let alone.' " *See Bowers v. Hardwick,* 478 U.S. 186, 199, 106 S.Ct. 2841, 2848, 92 L.Ed.2d 140 (1986) (Blackmun, J., dissenting) (quoting *Olmstead v. United States,* 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting)); *see also Billings v. Atkinson,* 489 S.W.2d 858, 859 (Tex.1973) (holding that an unwarranted invasion of the right of privacy constitutes a legal injury for which a remedy will be granted).

The only issue here concerns the individual's right to enter into intimate personal relationships, secure in the knowledge that our Constitution protects the relationship from intrusion by the government in the absence of a compelling state interest. *See TSEU,* 746 S.W.2d at 206; *see also Stanley v. Georgia,* 394 U.S. 557, 564, 89 S.Ct. 1243, 1247–48, 22 L.Ed.2d 542 (1969) ("For also fundamental is the right to be free, except in very limited circumstances, from unwanted governmental intrusions into one's privacy."). I strongly disagree that Henry's claim does not implicate a privacy interest protected by the Texas Constitution. If the right Henry asserts is not "implicit in the concept of liberty," then the right we recognized in *TSEU* is no more than a hollow shell.

I believe that the City infringed Henry's privacy rights at two points: First, when the police chief ordered his internal affairs division to investigate rumors of Henry's liaison, and later, when it denied Henry the promotion to which he would clearly have been entitled. *See Thorne v. City of Segundo,* 726 F.2d 459, 468 (9th Cir.1983) (stating that the plaintiff's constitutional privacy interests were implicated both when the defendants "forc[ed] her to disclose information regarding personal sexual matters" in a polygraph test and when the defendants "refused to hire her as a police officer based in part on her prior sexual activities"). The majority's assertion that "there can be no serious contention ... that the City intruded into the private affairs of Henry" is unfathomable. Henry never volunteered information about his relationship with Kelly Olson until *after* he had been denied the promotion. It was only at the hearing on his appeal to the Civil Service Commission that Henry finally stipulated that the affair actually occurred.

While the majority downplays the City's investigation in this case, it is undisputed that the police chief ordered his internal affairs officer to investigate the rumored affair. In this unique situation, the affair was substantiated by Sergeant Pollard, the offended husband, and required no further investigation. The report Pollard provided indicated that he had driven by Henry's house and the couple's trysting spots to confirm his suspicions. He searched for and found deeply personal love letters and cards from Henry to his wife that she had hidden in a box, under dried flowers, in the bottom of her closet. All of this "evidence" was given to the internal affairs investigator, who in turn, reported to the police chief. After denying the promotion, the City then offered Pollard's report and one of the letters as evidence in the hearing before the Civil Service Commission. These sensitive documents now form part of the public record in this

case. Pollard's personal stake makes his attempt to learn the truth understandable but does not justify the official investigation that was ordered here. The City clearly invaded Henry's constitutionally-protected privacy interests when it inquired into his off-duty, consensual sexual conduct. *See Woodland v. City of Houston,* 918 F.Supp. 1047, 1054 (S.D.Tex.1996).

Even if there had been no investigation and Henry had voluntarily disclosed the affair, however, Henry's privacy rights were implicated when the police chief denied the promotion based solely upon his affair with Olson. *See Thorne v. City of Segundo,* 726 F.2d at 468, 471. The majority's conclusion that Henry does not assert a constitutionally-protected right rests almost entirely on the fact that "adultery was a crime" at the time our Constitution was ratified. 928 S.W.2d at 473. The majority's constitutional analysis thus implies that the scope of individual rights under the Texas Constitution is frozen in time, limited to conduct or actions that were legal and accepted more than one hundred years ago. This analysis is inconsistent with this Court's opinion in *Davenport v. Garcia,* 834 S.W.2d 4, 10, 19 (Tex.1992) ("[H]istorical analysis is only a starting point.... In no way must our understanding of [our Constitution's] guarantees be frozen in the past; rather, our concept of freedom of expression continues to evolve over time.") (citations omitted). If it is true that Henry asserts no constitutionally-protected right because adultery was illegal in 1876, then the privacy right we recognized in *TSEU* also does not protect a woman's right to choose to terminate a pregnancy, *see* TEX. PENAL CODE art. 536 (1879), or the right of an interracial couple to marry, *see* TEX. PENAL CODE art. 326 (1879).[1]

The fact that Henry asserts a constitutionally-protected right to privacy is not dispositive, however. In *TSEU,* we recognized that the right to privacy is not unlimited, but should "yield ... when the government can demonstrate that the intrusion is reasonably warranted for the achievement of a compelling governmental objective...." *TSEU,* 746 S.W.2d at 205. The trial court in this case concluded that the police chief erred in denying Henry's promotion. I differ from the trial court because I believe the record shows that the department had a compelling interest justifying its action.

We acknowledged in *TSEU* that police departments, unlike most public agencies, are quasi-military organizations that may require "unquestioning obedience." *Id.* at 206. Here, the record contains substantial evidence that Henry's conduct had, at some point, intruded into the workplace and cast doubt upon his ability to command the trust and obedience necessary in a paramilitary organization. It was not unreasonable for the chief to conclude that Henry's betrayal of his fellow officer's trust had undermined his ability to assume a leadership position. Under these circumstances, the police chief's decision to pass Henry over until this volatile situation was resolved was justified.

Because I believe that the record contains substantial evidence that the City had a compelling interest in denying Henry's promotion, I join in the Court's judgment. I cannot, however, join in the majority's unnecessary and unjustified constriction of the fundamental constitutional right to privacy.

OWEN, Justice, concurring.

I join only in the judgment of the Court. The opinion of the Court is broader than necessary to decide the very narrow issue in this case, which is: *assuming* Officer Henry had a cognizable constitutional right, could the City of Sherman deny him a promotion when his adulterous affair with the wife of a fellow police officer led to disruption in the department. The answer obviously is yes. The Court need not engage in an extended discussion of a host of constitutional issues and principles of constitutional law to resolve this case.

1. Interestingly, interracial marriage was a far more serious crime than adultery at the time our constitution was adopted: While adultery was subject only to a fine of $100 to $1000, interracial marriage called for at least two years' imprisonment. *See* TEX. PENAL CODE art. 333, art. 336 (1879). Further, adultery was punishable only if the couple was living together or engaging in *"habitual* carnal intercourse." TEX. PENAL CODE art. 333 (1879) (emphasis added).

## I

The right of privacy which the United States Supreme Court and this Court have recognized is not absolute. *Roe v. Wade*, 410 U.S. 113, 154, 93 S.Ct. 705, 727, 35 L.Ed.2d 147 (1973); *Texas State Employees Union v. Texas Dep't of Mental Health and Mental Retardation*, 746 S.W.2d 203, 205 (Tex. 1987)("*TSEU*"). Even where fundamental rights are implicated, some regulation of those rights may be justified by a compelling state interest. *Roe*, 410 U.S. at 155, 93 S.Ct. at 728 (citing *Kramer v. Union Free Sch. Dist.*, 395 U.S. 621, 627, 89 S.Ct. 1886, 1889–90, 23 L.Ed.2d 583 (1969)).

In defining the parameters of the right of privacy, this Court has also observed that a state may have interests as an employer that differ significantly from those it possesses with regard to the public generally. *TSEU*, 746 S.W.2d at 205. *See also Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968)("the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general"). The interests of the State are even more compelling in the oversight of police officers and other quasi-military organizations because of the state's goal of protecting the safety of the general public. *TSEU*, 746 S.W.2d at 205–06. In contrasting the differences between employees of the Texas Department of Mental Health and Mental Retardation and of a police department, we noted with approval a trial court's finding that:

> the Department [of Mental Health and Mental Retardation] serves a different function and stands in a different posture in regard to the public as compared with a police department and that the unquestioning obedience required of police officers and members of other quasi-military organizations is not required of Department employees. Texas courts have shown deference to the important interests served by public agencies that are directly involved in the compelling state goal of protecting the safety of the general public.

*Id.* at 206. We agreed with the trial court that "the unique circumstances that may justify requiring police and fire personnel to take polygraph examinations" did not exist with respect MHMR employees. *Id.*

Accordingly, the right to privacy precludes intrusion into the lives of some state employees, but there are circumstances that warrant such an intrusion into the lives of police officers. *See generally Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. ——, ——, 115 S.Ct. 2386, 2391, 132 L.Ed.2d 564 (1995)(noting the Supreme Court has upheld random drug testing of federal customs officers who carry arms or are involved in drug interdiction in upholding random drug testing of high school and middle school athletes against Fourth Amendment and right of privacy challenges).

In the case before us today, Officer Henry sought a promotion. He was denied that promotion because he had an affair with the wife of Tom Pollard, a fellow officer. There is no question that the affair was highly disruptive to the relationship between that officer and Henry. There is evidence that Henry's conduct was also disruptive within the police department generally. Henry was seeking to assume a position of greater leadership. Yet, he had jeopardized his ability to command within an organization that requires "unquestioning obedience" from its members. The City's decision to deny a promotion to Henry under these circumstances was an action "narrowly drawn to express only the legitimate state interests at stake." *Roe*, 410 U.S. at 155, 93 S.Ct. at 728. Indeed, Henry was promoted when another position became available and presumably, when the disruption created by his relationship with the wife of a fellow officer had dissipated.

The exercise of a fundamental right, even if Henry's association with Pollard's wife could be so characterized, is not absolutely immune from regulation. Suppose that Officer Henry's conduct had not been an affair with Pollard's wife, but that Henry had insulted, derided and ridiculed Pollard and other officers during off-duty hours over a course of months, to the point that there was strong hostility and disruption within the department. Henry has a right of free speech,

but at some point that must give way to the needs of the state in disciplining its police officers. Under some circumstances, a police officer's exercise of free speech rights can be taken into account by the City in deciding if there is "a valid reason" within the meaning of Texas Local Government Code section 143.036(f) to deny promotion.[1] The United States Supreme Court has indicated that even comments by a state employee on matters of public concern may furnish grounds for discharge where a question of maintaining harmony among coworkers is presented and personal loyalty and confidence are necessary to the proper functioning of close working relationships. *Pickering*, 391 U.S. at 570 & n. 3, 88 S.Ct. at 1735–36 & n. 3. *But see Rutan v. Republican Party of Illinois*, 497 U.S. 62, 74–75, 110 S.Ct. 2729, 2736–37, 111 L.Ed.2d 52 (1990)(promotions, transfers and recalls of state employees other than certain high-level ones could not be based on political affiliation).

Under the facts of this case, the conduct of Henry was directly related to his job as a police officer and involved the wife of another police officer. There was evidence that Henry's conduct impaired his ability to command the trust and respect of those with whom he would work very closely in preserving the peace and protecting the public. The City was justified in denying the promotion even if the constitutional test of a "compelling state interest" is applied.

## II

The potential breadth of the Court's opinion causes me some concern. The opinion may be read to decide issues not before us, issues that we have not carefully considered in light of our own decisions and decisions of the United States Supreme Court. Assume, for example, that Henry had an adulterous affair with the wife of someone wholly unre-

lated to the police department and that Henry's conduct had no disruptive effect within the police department. Could Henry be denied a promotion because of his immoral but legal association with a married woman? What if Henry were not a man, but an unmarried woman who gave birth to the child of a married man who had no connection with the police department? Would we say that the City could discharge her or deny her a promotion because of her adulterous conduct? Would such actions raise a constitutional question about the right to bear or beget a child which the United States Supreme Court has said is a fundamental "right of the *individual*, married or single" that must be free from unwarranted governmental intrusion? *Eisenstadt v. Baird*, 405 U.S. 438, 453, 92 S.Ct. 1029, 1038, 31 L.Ed.2d 349 (1972)(emphasis in original). *See also Skinner v. Oklahoma*, 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655 (1942)(striking down statute calling for involuntarily sterilization of a thrice convicted felon, and holding that "[m]arriage and procreation are fundamental to the very existence and survival of the race"). I do not presume to answer these questions, but the Court's opinion today could be viewed as doing so.

\*    \*    \*    \*    \*    \*

For the foregoing reasons, I join only in the judgment of the Court.

1. Section 143.036(f) provides:
   Unless the department head has a valid reason for not appointing the person, the department head shall appoint the eligible promotional candidate having the highest grade on the eligibility list. If the department head has a valid reason for not appointing the eligible promotional candidate having the highest grade, the department head shall personally discuss the reason with the person being bypassed before appointing another person. The department head shall also file the reason in writing with the commission. On application of the bypassed eligible promotional candidate, the reason the department head did not appoint that person is subject to review by the commission.
   Tex. Loc. Gov't Code § 143.036(f).